# EXHIBIT A

ORIGIN RECEIVED
VENTURA SUPERIOR COURT

AUG 23 2024



VENTURA SUPERIOR COURT
**FILED**
08/23/2024
Brenda L. McCormick
Executive Officer and Clerk

Heidi Langley

Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
*LWelling@sssfirm.com*
*Skmeier@sssfirm.com*

Attorneys for Plaintiff John Roe EB 67

RECEIVED FOR SCANNING
VENTURA SUPERIOR COURT

AUG 23 2024

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF VENTURA

| | |
|---|---|
| John Roe EB 67, | Case No.:2024CUPP029265 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **NEGLIGENCE** |
| | 2. **NEGLIGENT SUPERVISION OF A MINOR** |
| DOE 1, a corporation; DOE 2, a corporation; DOE 3, an entity of unknown form; and DOES 4 to 100, | 3. **SEXUAL ABUSE OF A MINOR** |
| | 4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION** |
| Inclusive, | 5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF** |
| Defendants. | 6. **BREACH OF MANDATORY DUTY** |
| | **[DEMAND FOR JURY TRIAL]** |

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax (310) 773-5573

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, John Roe EB 67, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1.      This case involves egregious sexual and emotional abuse of a child.

2.      Between 1977 and 1979 while 13 to 15 years old, Plaintiff John Roe EB 67 was fondled, raped, and made to engage in oral intercourse approximately 20 times with an adult leader of Defendants' Church. This severe sexual abuse occurred in several locations, including on Defendants' property, and was enabled by the abuser's preeminent position among youth teachers in Defendants' ward.

## PARTIES

3.      Plaintiff John Roe EB 67 ("**Plaintiff**") is an adult male over the age of forty at the time of this filing and a resident of the County of San Francisco, State of California. As a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "John Roe EB 67" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. John Roe EB 67 is entitled to protect his identity in this public court filing by not disclosing his name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by Perpetrator, hereinafter referred to as "**Perpetrator Edwards**."

4.      Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5.      Defendant DOE 1, is and was at all relevant times herein mentioned, the religious entity, located at Thousand Oaks, California, through which Perpetrator Edwards held and used his position as "Teacher's Quorum President" to groom and sexually abuse Plaintiff. DOE 1 is a corporation duly organized and operating pursuant to the laws of the State of Utah. DOE 1 operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California. DOE 1 does business with and conducts continuous and systemic activities in California.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

2
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

1    DOE 1's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of

2    Utah 84150.  DOE 1 is registered to do business in California, and the presiding Bishop serves at

3    the pleasure of and subject to the direct and absolute control of DOE 1. The divisions of the

4    CHURCH are the wards, stakes and areas. DOE 1 is independently liable for its own conduct as

5    alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of

6    Defendants.

7    　　　　6.    Defendant DOE 2 is and was at all relevant times herein mentioned, a religious entity

8    and subsidiary of DOE 1. DOE 2 is a corporation duly organized, and operating pursuant to the laws

9    of, the State of Utah. DOE 2 operates properties, temples and other houses of worship within the

10    State of California. DOE 2 does business with and conducts continuous and systemic activities in

11    California. DOE 2's principal place of business is 50 East North Temple, Floor 20, Salt Lake City,

12    State of Utah 84150.  DOE 2 is registered to do business in California, and operates, maintains and

13    manages DOE 1's properties at the direction of and under the control of DOE 1. Doc 2, is

14    independently liable for its own conduct as alleged herein, is liable as a successor in interest to

15    another entity, and/or is an alter ego of Defendants.

16    　　　　7.    Defendant DOE 3, is and was at all relevant times herein mentioned, a religious entity

17    and subsidiary of DOE 1. DOE 3 is a religious entity of unknown form duly organized, and operating

18    pursuant to the laws of, the State of California. DOE 3 does business with and conducts continuous

19    and systemic activities in California. DOE 3's principal place of business is 1600 Erbes Road,

20    Thousand Oaks, CA 91362.  DOE 3 is registered to do business in California, and operates,

21    maintains and manages DOE 1's congregations and wards within Ventura County at the direction

22    of and under the control of DOE 1. DOE 3 has, or as alleged herein had, responsibility for some or

23    all operations in Ventura County, California. DOE 3 reports directly to DOE 1. DOE 3, is

24    independently liable for its own conduct as alleged herein, is liable as a successor in interest to

25    another entity, and/or is an alter ego of Defendants.

26    　　　　8.    The Defendants each assumed responsibility for the wellbeing of their members,

27    whether as clergy or volunteers appointed by DOE 1. In their capacities as Bishop, and other

28

---

3

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members. As a result, they each had a special relationship with members of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members from the harm they might inflict.

9.    Defendants' income comes from member tithes which are turned over to DOE 1 for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. DOE 1 does not provide information about their finances to their members or the public. Upon information and belief, DOE 1 receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, DOE 1 owns financial assets and real estate in excess of 200 billion dollars.

10.    The true names and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 4 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11.    Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

1   authority of said agency, employment, successor-in-interest and/or joint venture and that each and

2   every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring

3   and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint

4   venture.

5       12.     All of the acts, conduct and nonfeasance herein carried out by each and every

6   representative, employee or agent of each and every corporate business Defendant, was authorized,

7   ordered and directed by their respective Defendant's corporate or business employers, officers,

8   directors and/or managing agents; that in addition thereto, said corporate or business employers,

9   officers, directors and/or managing agents had advance knowledge of, authorized and participated

10  in the herein described acts, conduct and nonfeasance of their representatives, employees, agents

11  and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and

12  nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers

13  directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and

14  approved of each and all said acts, conduct or nonfeasance of their co employees, employees and

15  agents.

16      13.     This is an action for childhood sexual abuse brought pursuant to Code of Civil

17  Procedure section 340.1, subdivision (a)-(d) and any other applicable statute. Prior to the December

18  31, 2022 filing deadline, Plaintiff and DOE 1 entered into a tolling agreement that extended the time

19  to file until August 26, 2024. The misconduct described herein began in 1977 when Plaintiff John

20  Roe EB 67 was a minor, 13 years old. Plaintiff is over the age of forty.

21      14.     Moreover, as stated herein and at all times relevant, Defendants, each of them, and

22  DOES 4 through 100, knew or had reason to know, or were otherwise on notice, of the misconduct

23  alleged herein, which created the risk of childhood sexual assault by an employee, volunteer,

24  representative, or agent, and the person or entity failed to take reasonable steps or to implement

25  reasonable safeguards to avoid acts of childhood sexual assault. For purposes of subdivision (c),

26  providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or

27  reasonable safeguard. As such, Plaintiffs complaint is timely.

28

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

15.    Perpetrator Edwards was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a minor.

16.    During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over Plaintiff's abuser.

17.    Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

18.    Except as otherwise noted, a reference to "Defendants" in this Complaint shall include DOE 1, DOE 2, DOE 3, and DOES 4 through 100, inclusive.

**JURISDICTION AND VENUE**

19.    This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of Ventura and the State of California.

20.    The subject incidents upon which this Complaint are based occurred in the City of Thousand Oaks, within the County of Ventura, in the State of California. As such, venue is proper in the Ventura County Superior Court of California.

**FACTUAL ALLEGATIONS**
**(Common to All Causes of Action)**

21.    DOE 1 is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

22.    The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

23.    Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng
[2] [DOE 1] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

24.    The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

25.    Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

26.    Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

27.    Plaintiff John Roe EB 67 was a minor child and a member of Defendants' Church, in Thousand Oaks, California. Perpetrator Edwards was a "Teacher's Quorum President" of DOE 1 and used his position of authority therein to groom and to sexually abuse Plaintiff. Abuse by Perpetrator Edwards began when Plaintiff was just 13 years old. Intent on manipulating Plaintiff's emotions and taking advantage of his innocence, so that he eventually could sexually abuse him, Perpetrator Edwards exploited Plaintiff's fragile mental state to cause him extreme fear, anxiety, and confusion; coercing and manipulating Plaintiff in order to gain further power and control over him. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life.

28.    Eventually, Perpetrator Edwards initiated extreme sexual abuse of Plaintiff. Plaintiff endured ongoing, humiliating events of child molestation by Perpetrator Edwards, a figure of religious authority, whom Plaintiff had been taught to trust with his life and well-being and had

---

[3] [DOE 1] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

1 | never been given the choice but to trust.

2 | 29. Plaintiff is informed and believes and thereupon alleges, that, at all times herein

3 | mentioned, Defendants knew Perpetrator Edwards was using his position of authority within the

4 | Defendants' Church to groom and to sexually abuse one of its minor members, Plaintiff, and

5 | Defendants failed to take reasonable steps to protect him.

6 | 30. Perpetrator Edwards, engaged in fondling, oral intercourse, and anal rape with

7 | Plaintiff at various locations, including at Defendants' controlled events and meetings and on

8 | Defendants' properties.

9 | 31. From 1977 to 1979, the abuse took place within various classroom on Defendants'

10 | premises, at Perpetrator Edwards's home pursuant to Defendants' activities, in Perpetrator

11 | Edwards's vehicle during transport from Church activities, and in a motel.

12 | 32. In 1977 and all times thereafter, Defendants, bishops and/or counselors knew, should

13 | have known, reasonably suspected, or were otherwise on notice of the ongoing verbal, physical and

14 | sexual abuse by Perpetrator Edwards. Perpetrator Edwards was not only a youth teacher in the ward

15 | but was the "Quorum President." As such, he was in a highly visible position, particularly to the

16 | children of the congregation and their parents. The circumstances of the abuse were such that

17 | Perpetrator Edwards, in many of the 20 incidents over a 3-year period, ordered Plaintiff to remain

18 | behind after Defendants' meetings and activities. Repeatedly, as other children and their parents met

19 | and dispersed from the abuse locations or thereabouts, Plaintiff was left unsupervised with

20 | Perpetrator Edwards. Despite the obvious indications of Perpetrator Edwards's disturbing

21 | relationship with Plaintiff, Defendants did not intervene. Thus, Perpetrator Edwards's extreme

22 | sexual abuse of Plaintiff was allowed to continue both on and off Church grounds, always pursuant

23 | to the relationship existing between the two as head teacher and pupil within Defendants'

24 | congregation. Based on the foregoing, Defendants knew, should have known, suspected, or were on

25 | notice of Perpetrator Edwards's actions.

26 | 33. In 1977, Plaintiff was a member of Defendants' ward in Thousand Oaks, where he

27 | attended with his family. As a 10-year-old, he was engaged in various Church meetings and

28 |

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

8

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

activities, including "Mutual" and "Primary," which served as weeknight events and Sunday religious classes, respectively. Upon information and belief, Perpetrator Edwards served as "Teacher's Quorum President," essentially appointing him as a de facto headmaster or head teacher within the ward. By nature of holding this calling, Perpetrator Edwards had profound influence and control over minor children within Defendants' Church, including Plaintiff. Plaintiff in 1977 had just returned with his family from living outside the country, and Plaintiff was struggling to reacclimate. Likely sensing this opening, and leaning upon his well-recognized authority over children, Perpetrator Edwards began paying particular attention to Plaintiff. This progressed to Plaintiff being held back in a Church classroom with Perpetrator Edwards, while the rest of the attending Church members filed out. When nobody stopped to inquire about this unusual behavior, nor any Church member arrive to investigate, Perpetrator Edwards proceeded to fondle, have oral intercourse with, and sodomize the Plaintiff. This went on to occur in several different classrooms within Defendants' meetinghouse on at least a few occasions, the lead-up to which always involved Perpetrator Edwards holding Plaintiff back as other churchgoers disregarded this pattern and left. At other times, Perpetrator Edwards similarly kept Plaintiff until the crowd dispersed, and drove him home. During these assaults, Perpetrator Edwards fondled, engaged in oral sex, and anally raped Plaintiff in his vehicle. Yet more abuse of the same nature took place in Perpetrator Edwards's home and at local motels, always under the pretense of Plaintiff assisting Perpetrator Edwards with "planning activities." The horrific sexual abuse was perpetrated multiple times in each location and continued for approximately 3 years until Plaintiff was 15 years old. Regardless of where or when the abuse occurred, each incident shared a common thread – namely, that each was committed by virtue of Perpetrator Edwards's position with Defendants. Many involved a Church activity, or the pretense of planning the same. Collectively, they have caused Plaintiff immense pain and suffering still felt to this day.

34.     Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by DOE 1. Membership records are DOE 1's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to DOE 1.

35.     Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for *"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."* All annotations placed on a member's record are approved by the First Presidency.

36.     Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

37.     The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."  In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

38.     In reality, DOE 1 primarily staffs the Helpline with attorneys of Kirton McConkie,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

---

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341.2086 | Fax: (310) 773.5573

1  one of the largest law firms in the State of Utah.  Rather than notifying law enforcement or other

2  government authorities when Bishops and other Church clergy members call the Helpline regarding

3  sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie

4  attorneys, who advise the bishop not to report the abuse incident to law enforcement,

5  misrepresenting clergy-penitent privilege laws as their reasoning.

6        39.    Defendants' policies and protocols further direct teachers and other mandated

7  reporters who suspect a minor may report abuse to them to encourage the minor to instead speak

8  with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

9        40.    In another sexual abuse-related civil lawsuit against the Church and its agents, a

10  Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information

11  gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

12        41.    In other words, DOE 1 implements the Helpline not for the protection and spiritual

13  counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton

14  McConkie attorneys to snuff out complaints and protect DOE 1 and its wards from potentially costly

15  lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter,

16  dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for

17  information on abuse.

18        42.    Defendants' actions embody a culture that protects sexual predators, rather than

19  innocent and vulnerable children. Defendants handled the repeated allegations internally as a

20  "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops,

21  and personnel, allowed Perpetrator Edwards to continue completely unhindered and protected, even

22  in his predatory conduct. Defendants, their agents, and employees, including bishops, counselors,

23  or personnel mentioned herein, DOES 4- 100, and each of them, acted to protect the heinous and

24  unforgiveable acts of Perpetrator Edwards, and in such action taken against Plaintiff's innocence

25  and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

26  _____

27  [6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse
    (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-

28  accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

43.    At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises and other locations providing unsupervised access to youth members were to sexual abuse and sexual predators, and that sexual predators, such as Perpetrator Edwards in particular, had apparent, if not actual, authority within the Church community, on Church premises, and at the aforementioned related locations, while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, Perpetrator Edwards, systematically and continuously leveraged any and all authority which the title and association with CHURCH, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members of the Church under the supervision of Perpetrator Edwards or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members and did harm at least one of them, this Plaintiff.

44.    Defendants provided direct access to a large youth community wherein a danger to the community, Perpetrator Edwards, wielded power over the Plaintiff.

45.    Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that Perpetrator Edwards was isolating and taking minor children, including Plaintiff, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that Perpetrator Edwards conducting inappropriate behavior and conduct with minor children, including Plaintiff, at DOE 1's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

46.    Prior to, during, and after Perpetrator Edwards's sexual assault and/or sexual abuse, and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Perpetrator Edwards's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

47.    Notwithstanding their  knowledge of Perpetrator Edwards's sexual assault and/or

sexual abuse, and molestation of Plaintiff and other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by Perpetrator Edwards, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

48.    Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Perpetrator Edwards.

49.    As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrator Edwards's unlawful and inappropriate misconduct, Perpetrator Edwards was able to continue his sexual assaults and/or sexual abuse, and molestation of Plaintiff.

50.    Defendants acting through their representative, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Perpetrator Edwards because, inter alia, Defendants:

    a) Negligently hired, supervised, retained, monitored, and/or investigated Perpetrator Edwards.

    b) Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

    c) Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

51.    Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Perpetrator Edwards's conduct harder to detect including, but not limited to:

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341.2086 | Fax: (310) 773-5573

13

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

a)  Permitting Perpetrator Edwards to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator Edwards sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b)  Permitting Perpetrator Edwards continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrator Edwards's misconduct that created a risk of childhood sexual assault.

c)  Failing to inform or concealing from law enforcement officials of the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator Edwards had, and/or was, engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d)  Holding out and affirming Perpetrator Edwards to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

e)  Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrator Edwards with minor children.

f)  Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

52.  Defendants, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report Perpetrator Edwards to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation

14

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    of Plaintiff, thereby allowing the assault to occur and to continue unabated.

2       53.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or

3    refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement

4    to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal,

5    to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false

6    appearance of propriety, and to avoid investigation and action by public authority including law

7    enforcement.

8       54.    Plaintiff is informed and believes, and on that basis alleges, that such actions were

9    motivated by a desire to protect the reputation of Defendants and each of them, and to protect the

10   monetary support of Defendants while fostering an environment where such assault could continue

11   to occur.

12      55.    The wrongful, intentional, negligent acts and/or omissions of Defendants, and each

13   of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

14                          **FIRST CAUSE OF ACTION**

15                                **NEGLIGENCE**

16                **(Plaintiff Against All Defendants and DOES 4-100)**

17      56.    Plaintiff re-alleges and incorporates by reference herein each allegation contained

18   herein above as though fully set forth and brought in this cause of action.

19      57.    Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to

20   the minor's parent or had a duty to control the conduct of Perpetrator Edwards by way of the special

21   relationship existing between those individuals.

22      58.    Defendants knew or should have known of Perpetrator Edwards's misconduct and

23   inappropriate sexual behavior directed by Perpetrator Edwards to minor Plaintiff John Roe EB 67.

24      59.    Despite having knowledge of the misconduct, Defendants failed to take any

25   preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff John Roe

26   EB 67 or his parents regarding the abuse, despite having a legal duty to do so.

27      60.    As a result of Defendants' negligence, Plaintiff John Roe EB 67 was sexually abused

28

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

15

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

by Perpetrator Edwards.

61.     Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

62.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION
## NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against All Defendants and DOES 4-100)

63.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

64.     Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Perpetrator Edwards, on Defendants' premises and other locations providing unsupervised access to youth members. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like Perpetrator Edwards, a figure of authority for the Defendants' church community shared with Plaintiff.

65.     Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that Perpetrator Edwards was engaged in repeated inappropriate and harassing relationships with Plaintiff and may have exhibited inappropriate conduct around other minors; allowing Plaintiff to spend unsupervised one-on-one time with Perpetrator Edwards; ignoring and turning a blind-eye to Plaintiff's whereabouts and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341.2086 | Fax: (310) 773.5573

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

1 │ wellbeing, so that he could be with Perpetrator Edwards; and allowing Perpetrator Edwards to
2 │ repeatedly sexually harass and abuse the minor Plaintiff both on the Church premises and related
3 │ unsupervised locations.

4 │      66.    Had Defendants adequately and properly supervised, monitored, and protected its
5 │ students, Plaintiff would not have been harmed.

6 │      67.    Defendants also recklessly and negligently failed to implement and/or enforce
7 │ policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth
8 │ community, which fell well below the standard of care.

9 │      68.    Had Defendants, each of them, adequately performed their duty and responsibility,
10 │ then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual
11 │ assault and harassment he endured, and which still impacts his life today, as alleged herein.

12 │      69.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent
13 │ injuries including, but not limited to, physical and mental pain and suffering, severe emotional
14 │ distress, psychological harm, physical injuries, past and future costs of medical care and treatment,
15 │ and past and future loss of earnings and earning capacity, and other damages, in an amount not yet
16 │ ascertained, but which exceed the minimum jurisdictional limits of this Court.

**THIRD CAUSE OF ACTION**

**SEXUAL ABUSE OF A MINOR**

**(Plaintiff Against All Defendants and DOES 4-100)**

20 │      70.    Plaintiff re-alleges and incorporates by reference herein each allegation contained
21 │ herein above as though fully set forth and brought in this cause of action.

22 │      71.    While Plaintiff was a member at Defendants' Church, Perpetrator Edwards took
23 │ advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful
24 │ misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to
25 │ the acts given his age.

26 │      72.    Defendants ratified Perpetrator Edwards's sexual abuse of Plaintiff because
27 │ Defendants had knowledge that he had harassed and potentially harmed Plaintiff, in addition to any
28 │ other community youth members, yet they intentionally turned a blind-eye and still allowed him to

17

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing Perpetrator Edwards to gain access to and ultimately manipulate and sexually abuse Plaintiff. Defendants did not discipline, denounce, or discharge Perpetrator Edwards; as such, they instead accepted and thus ratified his conduct.

73.    At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with DOE 1 when they ratified Perpetrator Edwards's criminal conduct and adopted it as if it were their own conduct.

74.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

75.    In committing the acts described herein, the conduct of Perpetrator Edwards, Defendants, their agents, and employees, and DOES 4-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, DOE 1, DOE 2 and DOE 3.

### FOURTH CAUSE OF ACTION

### NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE
### (Plaintiff Against All Defendants and DOES 4-100)

76.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

77.    Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 4-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

78.     During the time Plaintiff was being sexually abused by Perpetrator Edwards, Defendants knew or should have known of any complaints of serious misconduct made against Perpetrator Edwards, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Perpetrator Edwards.

79.     Defendants knew or should have known that Perpetrator Edwards engaged in repeated misconduct against male members of the community, one being Plaintiff.

80.     Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise Perpetrator Edwards on Defendants' premises.

81.     Had Defendants, each of them, properly investigated, supervised, trained, and monitored Perpetrator Edwards's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed Perpetrator Edwards to continue, unhindered, with his predatory conduct directed towards underage members of the Church community, including Plaintiff.

82.     Defendants negligently hired, supervised, retained, monitored, and otherwise employed Perpetrator Edwards and negligently failed to ensure the safety of a minor community member in the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

83.     Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Perpetrator Edwards.

84.     Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their 'Teacher Quorum Presidents' and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon him.

85.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment,

19
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    and past and future loss of earnings and earning capacity, and other damages, in an amount not yet

2    ascertained, but which exceed the minimum jurisdictional limits of this Court.

### FIFTH CAUSE OF ACTION

### NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE

### (Plaintiff Against All Defendants and DOES 4-100)

86.    Plaintiff re-alleges and incorporates by reference herein each allegation contained
herein above as though fully set forth and brought in this cause of action.

87.    Defendants, their agents and employees, each of them, had a duty to warn, train and
educate their youth community in its custody, including Plaintiff, on known and knowable dangers
posed by its faculty and staff. Defendants, their agents, and employees, and DOES 4-100, also had
a duty to warn, train and educate its faculty and staff on its sexual harassment policy and
inappropriate boundary crossing within the youth community.

88.    Defendants, their employees and/or agents, each of them, breached their duty to
Plaintiff by failing to warn him of known and knowable dangers posed by its faculty and staff,
including Perpetrator Edwards; by failing to inform and educate him on its sexual harassment
policies and the methods to identify, report, and respond to inappropriate sexual harassment by
members of the priesthood; and by failing to train its faculty and staff, including Perpetrator
Edwards, on Defendants' sexual harassment policies.

89.    As a direct and legal result of the negligence of Defendants, their employees and/or
agents, and DOES 4-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted
and abused by Perpetrator Edwards.

90.    Had Defendants, their employees and/or agents, fulfilled their duties and
responsibilities, Plaintiff would not have been injured and damaged.

91.    As a direct and legal result of this negligent conduct, Plaintiff suffered severe and
permanent injuries including, but not limited to, physical and mental pain and suffering, severe
emotional distress, psychological harm, physical injuries, past and future costs of medical care and
treatment, and past and future loss of earnings and earning capacity, and other damages, in an
amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

20

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

## SIXTH CAUSE OF ACTION

### BREACH OF MANDATORY DUTY:

### FAILURE TO REPORT SUSPECTED CHILD ABUSE

#### (Plaintiff Against All Defendants and DOES 4-100)

92.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

93.    Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

94.    Defendants, acting through their employees, had, or should have had a reasonable suspicion that Perpetrator Edwards was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

95.    Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

96.    By failing to report suspected child abuse, Defendants allowed Perpetrator Edwards to continue, unhindered, in his abuse of minor children, including Plaintiff.

97.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff John Roe EB 67 prays for judgment against Defendants DOE 1,

3   DOE 2, DOE 3, their employees and/or agents, and DOES 4 through 100, and each of them, as

4   follows:

5          1.  For an award of special (economic) and general (non-economic) damages

6              according to proof;

7          2.  Attorney's fees;

8          3.  For costs of suit incurred herein; and

9          4.  For such other and further relief as the Court deems just and proper.

10

**JURY DEMAND**

11      Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

12

13

14   Dated:  August 23, 2024          **SLATER SLATER SCHULMAN LLP**

15

16                              By: _____

17                                  Michael W. Carney
                                    Lauren A. Welling
18                                  Sarah Kissel Meier
                                    Attorneys for Plaintiff
19

20

21

22

23

24

25

26

27

28

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

22
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A
31